1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

KBW ASSOCIATES, INC.,              )
                                   )
        Plaintiff,            )    Case No.  2:13-cv-01771-GMN-CWH
                                   )
vs.                                )    **ORDER**
                                   )
JAYNES CORPORATION, INC., et al.,  )
                                   )
        Defendants.           )
_____)

      This matter is before the Court on Defendants' Motion to Stay Litigation (#31), filed June 2, 2014; Plaintiff/Counterdefendant KBW Associates, Inc. and Third-Party Defendant International Fidelity Insurance Company's Response (#35), filed June 18, 2014; and Defendants' Reply (#38), filed July 3, 2014.

### BACKGROUND

      The complaint in this matter was filed on September 26, 2013.  (#1).  The allegations are straightforward.  In 2009, Defendant Jaynes Corporation, Inc. ("Jaynes") contracted with the United States Army Corps of Engineers ("COE") to construct additions to existing buildings at Creech Air Force Base, located in Indian Springs, Nevada.  The construction project was initially scheduled to begin in 2009, with completion scheduled for early 2011.  Plaintiff KBW Associates, Inc. ("KBW") began negotiating to construct the metal framing and outer shell of the buildings with Jaynes in May 2011, and entered into a subcontract for the construction of the same on August 11, 2011.  *See* Compl. (#1) at ¶¶ 7-10.

      KBW alleges that during the negotiation of the contract Jaynes represented that the contracted work would be performed during the time period of November 2011 through April 2012.  Compl. (#1) at ¶ 13.  Shortly after entering into the contract, KBW alleges that it procured shop drawings for Jaynes review and approval, but the work was delayed by Jaynes failure to

promptly review and approve the shop drawings.  Once approved, KBW alleges that it promptly ordered the materials necessary to begin construction but, upon commencement of construction, was delayed by various conditions imposed by Jaynes that were contrary to the terms of the contractual agreement.  *Id*. at ¶¶ 14, 15.  The resulting delay is characterized as a "pattern of mismanagement" evidenced by (1) failure to timely approve work, (2) unilateral imposition of work beyond the contractual requirements, and (3) improper work scheduling.  *Id*. at ¶ 16.  KBW seeks damages for (1) breach of contract, (2) unjust enrichment, and (3) breach of the implied covenant of good faith and fair dealing.  *Id*. at ¶¶ 20-40.

Jaynes acknowledges that it entered into a contract with the COE for work to be performed at Creech Air Force Base, and that it subcontracted with KBW on the project.  (#8) at ¶¶ 7-10.  Jaynes denies all allegations that it mismanaged the project or that KBW is entitled to damages or proceeds from the bond.  Jaynes asserts several affirmative defenses and has filed counterclaims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) unjust enrichment.  The affirmative defenses and counterclaims are based generally on allegations that KBW failed to perform material requirements of the contract, failed to meet construction schedules, failed to perform as directed by the contract, failed to cure deficient work, failed to warranty work, and abandoned the project prior to completion.  Jaynes also filed a third-party complaint against International Fidelity Insurance Company ("International Fidelity"), alleging that it issued a performance bond in favor of Jaynes and is obligated to remedy KBW's default and breach, perform KBW's outstanding scope of work, or pay all amounts incurred by Jaynes to remedy the alleged breach.[1]

On December 20, 2013, Jaynes filed a proposed discovery plan and scheduling order requesting an additional six months beyond the standard deadlines to complete discovery.  The additional time being necessary to allow Jaynes to negotiate a dispute with the COE regarding a

---

[1]  International Fidelity filed its answer to the third-party complaint on November 22, 2013.  (#13).

liquidated damages assessment under the prime contract.[2]  Though initially approved, the scheduling plan was later withdrawn and the parties instructed to submit a new plan.  The parties disagreed on the length of discovery, Jaynes seeking a twelve-month discovery period and KBW seeking the standard six-month discovery period.  After consideration of the parties respective positions, the Court adopted the standard time periods for discovery as measured from the date the proposed plan was filed.

Approximately four months after entry of the scheduling order, the parties submitted a stipulation to extend the discovery deadlines.  (#29).  The basis for the requested extension was the continued attempts to resolve the dispute between Jaynes and the COE.  The parties indicated that they were attempting to reach an agreement on a stay to accommodate the ongoing dispute with the COE.  Other than initial disclosures made pursuant to Rule 26(a)(1), the parties had not engaged in any substantive discovery at the time the stipulation was filed.  The requested extension was approved.  (#30).

Shortly thereafter, Jaynes filed its motion to stay the litigation pending resolution of its dispute with the COE.  In the motion, the primary basis for the stay is identified as the contract between KBW and Jaynes.[3]  Jaynes notes that KBW has asserted a Miller act claim against it and that the COE has asserted claims of delay and assessed liquidated damages of approximately $410,000.00 against Jaynes in separate litigation ("Corps litigation").  Jaynes argues that KBW is, at least in part, responsible for some of the delay that resulted in the liquidated damages assessment and asserts that this litigation should be stayed pending resolution of Corps litigation.  Because Jaynes is actively contesting the liquidated damages assessment in the Corps litigation, it claims

---

[2]  As a result of the additional six months to complete discovery, the discovery cutoff date would have been originally set for November 3, 2014.

[3]  The subcontract is attached as exhibit 1 to the motion and provides, in pertinent part as follows: "If Subcontractor files a Miller Act suit or other action against the Contractor, its payment bond surety, or both, which may relate in whole or in part to the rights or duties of the Owner as the Subcontractor's work, Subcontractor shall, upon the Contractor's request, consent to a stay of such suit or action pending the exhaustion of the procedures for the resolution of disputes under the Prime Contract."  *See* Ex. 1 attached to Jaynes' Mot. (#31).

3

that KBW is contractually obligated to agree to a stay.  Jaynes represents that if the Corps litigation is "resolved" in its favor, this litigation can continue.  However, if the Corps litigation is not "resolved" in Jaynes favor, the decision will likely be appealed and "Jaynes does not and cannot know how long the appeals process will likely take to be resolved."  (#31) at 6:19-21.  Jaynes asserts that the claims of this litigation and the Corps litigation are so "intimately woven" together that "[t]o attempt to litigate and resolve these actions separately would be an unnecessary use of judicial resources, and cause the parties' to incur unnecessary time, expense, and effort."  Lastly, Jaynes suggests that to allow this litigation and the Corps litigation to continue simultaneously would increase the "risk of inconsistent verdicts" creating potentially conflicting liabilities.

KBW opposes the motion claiming it is based on nothing more than an incorrect, unilateral interpretation of the subcontract.  (#35) at 2:22-23.  Setting aside the allegedly improper reliance on an allegedly inapplicable contractual provision, KBW asserts that Jaynes did not meet its burden to show that a stay is appropriate.  According to KBW, Jaynes is using the Corps litigation as leverage in this dispute without providing any substantive support that the two are related.  KBW further asserts that a stay in this litigation in favor of the Corps litigation would be unfairly prejudicial, as KBW is not permitted to participate in the Corps litigation and the request for stay is untimely.  Lastly, KBW asserts that there is no basis for a fee award based on the alleged breach of contract.

In reply, Jaynes reiterates its position that KBW is contractually obligated to agree to a stay.  Jaynes continues to characterize this litigation and the Corps litigation as "concurrent actions," and argues that KBW's claims will be directly impacted by the outcome in the Corps litigation, which addresses the liquidated damages assessment against Jaynes.  The two actions are intertwined, according to Jaynes, because (1) KBW's delays and misconduct in performance of the contract are the reason for the liquidated damages assessment from the COE and (2) KBW's delay damages, if any, were caused by the COE, not Jaynes.  Thus, permitting this litigation to continue without a stay would result in the avoidable expenditure of unnecessary and duplicative time, expense, and effort.  Whereas, granting the stay would eliminate the potential for conflicting liabilities and damages because Jaynes liability to KBW, if any, cannot be determined until a final determination is made in the Corps litigation.  Jaynes does not dispute that it has withheld payment to KBW while

awaiting determination of a liquidated damages assessment.  Even if the contractual provision to agree to a stay does not apply, Jaynes argues a stay is appropriate as "KBW has not identified any cognizable harm or prejudice from a stay" in permitting the Corps litigation to be resolved before the claims of KBW, a lower-tiered subcontractor, are adjudicated.

### DISCUSSION

A court has broad discretionary authority to control its own docket, which extends to the issuance of a stay.  *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936).[4]  This power to stay is "incidental to the power inherent in every court to control the disposition of the causes of action on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id*. The moving party bears the burden of demonstrating that a stay is warranted.  *See Clinton v. Jones*, 520 U.S. 681, 708 (1997).  In evaluating whether a stay should be granted, courts consider the competing interests at stake, including (1) the possible damage which may result from a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) "the orderly course of justice measured in terms of simplifying or complicating the issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).  The Ninth Circuit has held that a stay pending resolution of an independent proceeding which bears upon the case is appropriate regardless of whether the separate proceedings are judicial administrative, or arbitral in nature.  *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  Nevertheless, a stay pending resolution of independent proceedings "should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims." *Id*. at 864.

### 1. Stay based on Contract

The primary argument advanced in support of the requested stay is a contractual provision. The existence of a contractual provision requiring a party to agree to a stay does not, standing

---

[4]  A magistrate judge is authorized to determine motions to stay proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) as long as the resulting order does not effectively deny the ultimate relief sought in the case.  *S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1260 (9th Cir. 2013); *see also PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 13-14 (1st Cir. 2010).  Since the decision issued herein does not result in denial of the ultimate relief, the undersigned has authority to determine the pending motion to stay.

1  alone, require the court to grant the stay because it is the court, not the parties, who determines

2  whether to enter a stay.  Nor does a contractual provision requiring parties to agree to a stay

3  minimize the requirement that the moving party meet its burden to show that a stay is warranted.

4  The court would certainly give weight to the rationale offered for entering into such a provision, but

5  that rationale must be made clear through the factors the court weighs in determining whether a

6  stay is appropriate, including factors affecting the court itself.

7        Even assuming application of the contractual provision advanced by Jaynes, a stay is not

8  appropriate based solely on the contract language.  The contractual provision in question provides:

9  "If Subcontractor files a Miller Act suit or other action against the Contractor, its payment bond

10  surety, or both, which may relate in whole or in part to the rights or duties of the Owner as the

11  Subcontractor's work, Subcontractor shall, upon the Contractor's request, consent to a stay of such

12  suit or action <u>pending the exhaustion of the procedures for the resolution</u> of disputes under the

13  Prime Contract."  *See* Ex. 1 attached to Jaynes' Mot. (#31); *supra* at fn. 4 (emphasis added).

14  Contrary to Jaynes' suggestion, the Court does not view the language at issue as requiring a consent

15  to stay <u>until</u> a final decision and any appeal of other claims are concluded.

16        The Corps litigation arises from the prime contract entered into between the COE and

17  Jaynes.  The prime contract is subject to the Contracts Disputes Act ("CDA"), 41 U.S.C. §§ 7101 *et*

18  *seq*.  The CDA provides an administrative claims process for contract-based claims made against

19  the federal government and applies to any express or implied contract entered into by an executive

20  agency for the procurement of property or services.  41 U.S.C. § 7102.  Under the CDA, claims are

21  first submitted in writing to the contracting officer, who must issue a decision in writing.  41 U.S.C.

22  § 7103.  The time for issuance of a decision by the contracting officer depends upon the monetary

23  value of the claim under consideration.  The contracting officer has 60 days to issue a decision on

24  claims for less than $100K.  41 U.S.C. § 7103(f)(1).  The contracting officer must issue a decision

25  on claims in excess of $100K within 60 days or notify the contractor of a larger time within which

26  the decision will be reached.  41 U.S.C. § 7103(f)(2).  Any extension of the time period for the

27  contracting officer to issue a decision must be within a "reasonable time" subject to consideration

28  of several factors.

The decision by a contracting officer is "final and conclusive," but subject to appeal in the manner authorized by the CDA.  *See Palafox Street Associates, L.P. v. United States*, 114 Fed. Cl. 773, 781 (Fed. Cl. 2014) ("the CDA requires that a contracting officer issue a final decision on the claim before it can be appealed") (citations omitted).  Upon receipt of the contracting officer's final decision, the contractor must elect either to appeal the decision to either the appropriate board of contract appeals or the Court of Federal Claims.  41 U.S.C. §§ 7104(a)-(b)(1).  Once a contractor chooses the forum in which to lodge its appeal, the choice is binding and the contractor is no longer able to pursue its appeal in the alternative forum.  *Palafox Street Associate, L.P.*, 114 Fed. Cl. at 781 *citing Nat'l Neighbors, Inc. v. United States*, 839 F.2d 1539, 1542 (Fed. Cir. 1988) ("[T]he binding election of forums is an 'either-or' alternative, and, as such, does not provide a contractor with dual avenues for contesting a contracting officer's adverse decision."); *but see Bonneville Assocs. v. United States*, 43 F.3d 649, 653 (Fed. Cir. 1994) (the election doctrine only applies if the forum chosen by the contractor had jurisdiction over the appeal).

It is the undersigned's view that the contract language at issue does not contemplate an agreement to an undefined stay pending final resolution of an appeal of a contracting officer's final decision.  Jaynes has made no effort to explain or otherwise brief how the language "exhaustion of procedures for resolution" should be interpreted to mean "final resolution" of any claim, including an appeal.  Construed most broadly, the contract language could be extended to the point of election for an appeal of a final decision.  The more accurate construction takes into account that the decision issued by the contracting officer is a "final decision" under the CDA.  Thus, the term "exhaustion of procedures" is more appropriately viewed as those administrative procedures which must be satisfied <u>before</u> a claimant may seek judicial relief in the form of an appeal.  *See M. Maropakis Carpenty, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (CDA jurisdiction "requires both a valid claim and a contracting officer's final decision on that claim").  This is particularly true in light of the fact that any appeal of a "final decision" is discretionary.  At the point of "final decision" by the contracting officer, all necessary procedures for resolution of a claim have been exhausted.

Based on the record before the Court, Jaynes submitted its request for decision (attached as

Exhibit 4 to Jaynes' Reply (#38)) contesting the liquidated damages assessment in the Corps litigation on or about May 16, 2014. Absent notice of an extension, the contracting officer's final decision on the claim would have been due in July 2014. Approximately five months have passed since the time a final decision would have been due. Assuming timeliness of a final decision from the contracting officer, the time period for appeal to an agency board under section 7104(a) has likely expired, and there would be less time than appears necessary to complete discovery in this matter to file an appeal under section 7104(b)(1). Consequently, there is no justification for this litigation not to go forward.

Moreover, Jaynes acknowledgment that it believes any stay of this matter should extend through the appeals process underscores an additional, important issue. By its own admission, Jaynes does not know how long such a process could take, but it is not inconceivable that such a stay would be measured in years, not months or weeks. The Ninth Circuit made clear that, while a stay pending resolution of independent proceedings may be appropriate, such a stay "should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims." *See Leyva*, 593 F.2d at 863. The delay in payment of monies contractually owed to a subcontractor on a construction project, though perhaps not irreparable, still constitutes damage, which increases the longer payment is delayed. Were there any "reasonable time" in which Jaynes could assure the Corps litigation would be resolved, perhaps the Court would be more amenable to the stay. There is, however, no assurance Jaynes can provide that would transform the stay, as requested, into something other than an open-ended stay.

**2. Possible Damage Or Inequity From Granting Stay**

Jaynes also argues that "KBW has not articulated any comprehensible damage or prejudice" that would accrue in event of a stay. This, however, incorrectly shifts the burden to KBW. It is Jaynes, the moving party, who bears the burden of making "out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to someone else." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) citing *Landis*, 299 U.S. at 255.

In reviewing the briefing submitted by Jaynes in support of the request for stay, the

8

1   undersigned found footnote 3 in Jaynes reply illuminating.  It provides: "Jaynes anticipates that
2   resolution of the liquidated damages issue [Corps litigation] will resolve some, but not all of the
3   parties claims and defenses.  However, if Jaynes is unsuccessful, Jaynes will be compelled to
4   proceed with this instant action asserting backcharges and offsets against KBW for its delay, and its
5   right to seek indemnification from KBW, pursuant to the parties' contract."  Jaynes makes plain
6   that, regardless of the outcome of the Corps litigation, this litigation will not be resolved.  Jaynes
7   appears to minimize the impact of the Corps litigation by claiming, for example that: (1)
8   "resolution of the [Corps litigation] will potentially resolve some of KBW and Jaynes' claims,
9   counterclaims, and defenses[,]" (2) "resolution of the [Corps litigation] will potentially limit the
10   parties' issues[,]" and (3) it is in the parties' "best interest to allow the [Corps litigation] to resolve
11   first, which will likely partially resolve and simplify the issues in this pending action."  The Court
12   does not find Jaynes inequity argument particularly credible in light of its acknowledgment that a
13   positive outcome for Jaynes in the Corps litigation would only partially or potentially resolve or
14   simplify the issues in this litigation.

15       This position further undercuts Jaynes' argument that a stay is necessary to avoid
16   conflicting or inconsistent decisions, as it acknowledges the reality that this litigation would
17   continue regardless of the outcome in the Corps litigation.  The proposed stay is, in the Court's
18   view, an attempt to obtain leverage in the current suit with no guarantee, or even likelihood, that
19   the Corps litigation has any impact on this case.  Regardless of the outcome of the Corps litigation,
20   Jaynes will still have to show that delay was caused by KBW.  There is nothing before the Court to
21   suggest that KBW is required to adjust its claims based on the outcome of the Corps litigation.
22   This also lessens any concern regarding the potential "duplication" of work, as it is clear that
23   substantial discovery will need to take place regardless of the outcome of the Corps litigation.

24   **3. Orderly Course of Justice**

25       Ultimately, the Court does not believe that staying this case for an indefinite period to
26   accommodate the Corps litigation would have any appreciable affect on simplifying the issues.  Nor
27   will permitting the cases to go forward simultaneously complicate the issues of proof or questions
28   of law.  Discovery should proceed.  The parties are instructed to submit a new discovery plan and

scheduling order by February 27, 2015.

       Based on the foregoing and good cause appearing,

       **IT IS HEREBY ORDERED** that Defendants' Motion to Stay Litigation (#31) is **denied**.

       **IT IS FURTHER ORDERED** that the parties shall submit a new discovery plan on or before **Friday, February 27, 2015**.

       DATED: February 13, 2015.

_____
C.W. Hoffman, Jr.
United States Magistrate Judge